before you, this simply comes down to the credibility of the witness. It's our argument that the commission, the facts that they rely upon and their findings are not sufficient to find Mr. Hostny not credible. Could you keep your voice up just a little, please? I'm sorry, Your Honor. I apologize. In both of the commission's decisions, they list basically the same five factors that they rely upon to find Mr. Hostny not credible. First, they find that because his symptoms waxed and waned following his accident, because he said that he was lifting a ladder, felt a pop in his neck, kind of like cracking your knuckle, felt pain, but then it went away. But then with rest, the next morning, he had pain again. Following Monday, when he went to work, the pain was alleviated with activity. Mr. Hostny gave the same history to the surgeon, Dr. Yuck, who opined that his condition of ill-being was connected to his job. There's obviously some credibility issues that are involved here, but what is your reaction to the allegation that at no time in June, July, or August 2004 did he complete an accident report, several months apparently went by, and nothing was reported? How does that bear on the issue? Well, under the law, he's not required to complete an accident report. All that he's required to do is to provide the employer with notice, which he – And when was that first done? It was in, I believe, July. Shortly before he went to the chiropractor, he informed his supervisor that his neck was hurting. He was going to the chiropractor. Did the supervisor agree with that, or was that disputed? I'm sorry. Was that disputed? I don't believe so, that he informed his supervisor that his neck was hurting, that he was going to the chiropractor. I don't think there's any dispute there. I believe what the dispute is, whether he added the magical prepositional phrase, I injured my neck at work. Instead, he just said, my neck's hurting. He didn't say, my neck's hurting at work. Do you think that's important? No. Why's that? Because so long as he gives the employer notice of the injury, that's what's required of notice. And here, this really isn't a notice issue before the court, because notice was waived when the employer claimed credit under age 8. So pursuant to statute, notice was waived. Well, Casio testified that he had no knowledge from any source of claimant being hurt at work prior to a September 22, 2004, conversation with the claimant. That's what Casio testified to. Right. At work. But I believe Mr. Casio did say that the officer said something about going to the chiropractor, that his neck was hurting, but he didn't mention anything about injuring himself at work. Well, then how would the employer supposed to know? If somebody's going to a chiropractor because his neck is bothering him, shouldn't he tie it into something that happened at work? Well, pursuant to the court's holding in S&H flooring, which also involved a notice issue, the act is to be interpreted liberally in terms of notice. In that particular case, the employee didn't give the employer notice until 49 days after he stopped working for the employer. But what was the nature of the notice? I think that's where Justice Hudson is going in that it seems almost commonsensical that notice is a connected frame in terms of some connection and someone has a reasonable knowledge that there is a relationship between this condition of ill-being and something that happened at the work site. So, I mean, if you're going to cite S&H, what was the nature of that notice after 49 days? Well, the nature of the notice was the wife calling in saying that his knees were because the man's working on his knees all day, that knee pain was coming from work. Therefore, it was put on sufficient notice of the accident. But once again, I reiterate, notice is not an issue in this case. The commission is simply saying because he did not provide the employer with sufficient notice of the work happening or the accident happening at work, therefore, he's not credible. Why can't they make that determination? Because it doesn't contradict his testimony that he injured himself lifting a ladder. It supports his testimony that he was having neck pain during that time. Therefore, he's going to the chiropractor. Can I ask a question? You cite S&H and we're hearing this argument more and more. We generally don't hear it from Petitioners. We hear it from Respondents, that we should attach an extra degree of scrutiny every time the commission reverses a credibility finding of an arbitrator and doesn't give adequate reasons for doing it. You don't really want us to apply an extra degree of scrutiny, do you? I cited the case because the appellate court found it important enough to publish the case rather than just issue a simple ruling. What do you think we should do? Do you think we should adopt that as a rule? We'll begin applying an extra degree of scrutiny every time they do it and they don't give reasons for doing it? Or do you think we should just make them give reasons every time they deviate from an arbitrator's credibility findings? Well, once again, pursuant to the court, I think that's what the court's decision in S&H was alluding to. No one said they may do it. The commission should do it. They may do it. Right. Because we got a little bit tired of seeing it with such frequency. Right. Well, what's your position? Do you think we should do it? Well, I would say that there should be some when you're dealing with credibility of two competing witnesses who testified before the arbitrator and it's not simply the commission relying upon facts that are in the record that were similarly situated to the arbitrator. For example, if there's two competing medical doctors who testified by way of evidence deposition and the arbitrator is simply reading both of those depositions, the commission's at the same advantage as what the arbitrator is there. But where there's two competing witnesses who testified before the arbitrator who the arbitrator has the opportunity to view and, you know, decipher who he believes to be more credible on a particular issue, then I think in that situation the commission should give the arbitrator a bit more deference than what it does already has to know about, essentially, because they're no longer taking testimony since 1989. They don't ever see witnesses unless it's for some other matter like a 19-H proceeding or an 88 position post-arbitration. So I believe in that situation, as is here, where there's two competing witnesses testifying before the arbitrator, then there should be, if they're going to reverse the arbitrator based upon credibility of those two witnesses who testified before him, I think it should require some degree of a harder look as to why they reversed him. I'm not saying that they can't reverse the arbitrator. I'm just saying that in that situation where there's two competing witnesses before the arbitrator who he has the advantage of viewing as they testify, in that situation I think that the commission should give, you know, more deference to the arbitrator in that case and explain why one witness is more credible than the other. So in effect what you're saying is that an arbitration, if the only determination of credibility is based on demeanor, which is the only observational thing missing from a commission determination, right? Right. That in effect the arbitrator's determination of credibility should not be disturbed? No. No. And as I've told Justice Hoffman, I think it can be disturbed. How? If it's only demeanor, that's the distinction and difference. If the commission provides sufficient basis, for example, if, you know, the ---- No. See, you missed the hypothetical. The hypothetical was the only difference is demeanor, the only distinction factor. I mean, which anything beyond demeanor, the commission is quite capable of making a credibility differentiation and determination at variance with an arbitrator's opinion. I believe the appellate court applies that same standard to cases before the trial court anyway, where the jury or the judge or the trier of fact is, is viewing the demeanor of the witness. They give substantial deference to the trier of fact, but it's not absolute. I mean, they can reverse it, but it's not an absolute standard that they can't touch. But really all we have here is basically a determination by the commission if I'm not mistaken, that the veracity, if you will, of the claimant is questioned because the claimant does not give at least notice of connectivity between a condition and a word. Right? Correct. But that notice is sufficient pursuant to the legislature. Okay. You're arguing that's sufficient under case law as notice, but can't the commission also use the quality, if you will, of the notice as an indication of, of veracity? I don't think so, because it doesn't, it doesn't rebut his testimony or make it inconsistent. Counsel, there are specific reasons delineated by the commission as to why they found that the claimant was not credible. And you're arguing that he is. But why don't we break it down succinctly? The evidence indicates with the medical provider's work history, the claimant did not report a work-related accident to any of his medical providers until September 28, 2008, several months after the alleged incident. So what is your response to that? My response is the medical provider should not record an accident. It doesn't mean the same as him not telling him that there was an accident. That is the fault of the medical provider in not writing it down. And that's assuming that all medical providers go by history the same as what an investigator or an adjuster or an attorney writes down on the history. I mean, they're not saying they're saying, okay, they want to witness the accident. What time did it happen? Were you at work at the time? Well, we operate on the assumption that a claimant or anyone who goes to a physician is forthcoming with all information that will help them be cured or treated. Right. And we operate under the assumption that if it's accidental, that it would appear reasonable to assume that the reportation that it was an accident would be done by the claimant. Now you're saying that, well, the provider didn't take that down, right? I assume so. By looking at the record, it doesn't appear as though he wrote that down in his notes. Well, isn't it also reasonable to assume that it was never told to him? Why would it be reasonable to assume that it was never told to him? No. Just because he didn't write it down, you know, he's not. Well, there's a number of providers out there that take compensation cases. And they want to know right away. Actually, I was going to bring that up to you, Your Honor. There's a number of chiropractors that say, you know what, I don't care. I submit to your Blue Cross because they're not going to hassle me as much as what the workers' health care is on treatment. Of course, most importantly is the commission found him not curable. Right. If you have that finding, it kind of takes care of anything he says. Well, I think they're making the finding based upon what's recorded in a note that he never even made to begin with. They're using a note completed by the chiropractor, not by him, as impeachment on him, as a prior inconsistent statement to him. And he had no control over what the chiropractor put in his note. Well, he met Gamble as a chiropractor. Then he went to see his primary care physician, Dr. Fiedler, on two dates. And yet Fiedler's notes do not make any mention of a work-related injury. You don't find it to be unusual at all that he goes to the chiropractor or his own physician on several dates and never mentions how he got injured? They never record how he got injured. And Dr. Fiedler is the one who wrote the note saying he's off work due to a work-related injury, and he continued to follow up with Dr. Fiedler afterwards. After Dr. Rana, the doctor from the EMG, he took the history of Mr. Hosny being injured on two specific dates. He followed up Dr. Fiedler afterwards, who was still silent as to history. He followed up Dr. Yuck, who took the history almost the same as Dr. Rana. Still, Dr. Fiedler was silent on the history. All right. Well, let's do this. In order to overcome the manifest weight of the evidence standard, that means that the opposite conclusion must be clearly apparent. You would agree with that? Yes. So tell us succinctly why the opposite conclusion, to sum up, is clearly apparent. Because his testimony is unrebutted. The evidence that they rely upon that the commission says rebuts his testimony does not rebut his testimony. It's not inconsistent with him having an accident. Medical records couldn't be used to rebut. He says that he reported this. The providers don't have anything in their records. Doesn't that somehow rebut his testimony? No. Actually, it supports his testimony of a neck injury, of him seeking treatment. The fact that he didn't tell them how he got injured is irrelevant. No, no, no. The fact that he did not report it. That he did not report it in their notes, that is related. You're presuming that he told them that, aren't you? And you're presuming that he did not tell them that. I think it's a reasonable inference. They don't have it in their records as they normally would and expect it to. As you would say, normally would. But as I was talking or discussing with Justice Holdridge about it. Dr. Holdridge? It is true. I have a Ph.D. He's got a Ph.D. He might as well call him Dr. You know, some medical providers, they don't want to deal with workers' comp. So, you know, they know if they put it in their notes that this is work-related, the health insurance carrier is going to deny it and then they've got to deal with an adjuster who's going to be, you know, brighten them up with the treatment. Okay. So we have a fact. It's not there. You accept that's a fact, right? In the record. Okay. It doesn't address that issue, right? Right. It's not there. The presence or absence thereof could be. Neutral. But there could be an inference. And they're not. Well, pursuant to this Court's holding in first cash financial, for the finder of fact to draw an inference, it has to be the most probable inference. It can't be equal to other inferences. So I would say no, that they can't draw that inference. If it could be equally drawn the other way, I would say no, they can't draw it in that fashion. Any other questions? No. Thank you. Thank you. Counsel, please. Please, the Court. Mr. Powers, John Makarowski on behalf of Appley, Anning, Johnson. What we're dealing with here, Justices, is a question of fact, and it is for the commission to weigh the evidence, draw reasonable inferences from the evidence, and to judge the credibility of the witnesses. And in this case, the commission in their findings specifically stated that Mr. Cascio's testimony was credible and Mr. Hostiny's testimony was not. And these findings are well supported by the evidence. Mr. Hostiny was familiar with workers' comp and had prior claims. In those prior claims, when he saw his physicians, he gave a history of a work occurrence. On the date of hire, he was exhibited a safety video and told by his employer to report all accidental injuries on the job immediately and fill out an accident report, none of which he did in this case. Now, Mr. Cascio had tremendous contact with Mr. Hostiny. He would see him three to five times a week in person for a half hour to an hour and confer with him via walkie-talkie three to ten times per day. Yet, there never was any report of any June 4 accident. Now, with respect to the June 4 initial incident that Mr. Hostiny claims, lifting a ladder, he admits that he had no pain performing that work activity. He indicates that the first time he experienced pain was when he woke up the next morning. Yet, there was no report and he continued to work. Now, Consul indicated that he advised Mr. Cascio on July 13th that he was going to a chiropractor. The claimant's testimony was, I told Mr. Cascio my neck was sore. No reference of any work incident or episode. Mr. Cascio denies that conversation ever having taken place. Now, despite his past familiarity with workers' comp, when he goes to the first medical visit on July 15th to the chiropractor, he submits it under group. He gives no history to the chiropractor of any onset with his symptoms from a June 4 occurrence, nor does he relate it in any way to his work activity. He treats with the chiro from July 15th through July 29th of 04. Now, initially in his testimony, Mr. Hostiny on direct indicated he had no type of ridicular pain preceding the occurrence of August 2nd of 04. His testimony was impeached on cross-examination where it was pointed out that he was complaining to his chiropractor of pain radiating from his neck down the shoulder and the chiropractor had already made a recommendation that he undergo an MRI study on July 22nd and again on July 27th and suspected the abnormality at C5-C6, which is the site of the ultimate surgery he had the following year on March 15th. So his symptoms already predated the alleged second occurrence. Counsel, let me ask you a question. Yes. Under the law, under the law, can an employee's testimony about an accident standing alone be sufficient to justify an award under the law? It could, depending upon the circumstances of the evidence. But here looking at the totality of the evidence, which the commission did, and with respect to the August 2nd, we then have the same allegation of carrying a letter. Again, we have no report. Now, he sees or calls into his family doctor, Dr. Fielder, for prescriptions July 22nd, August 22nd. Again, no mention of any work episode. September 15th, he does tell the employer, I'm having pain in my neck and arm. I'm going to go see a doctor. Can I leave work? The employer says fine. Now, what's significant, when he goes to Dr. Fielder on September 17th, counsel indicates that Mr. Hostany told him about an accident and all these doctors neglected to record it properly, but he did give a history. And what he said, he had symptoms since July, which is inconsistent with an August accident, inconsistent with the alleged June accident, and again, no reference to any specific work episode or any event of June 4th or August 2nd. The doctor then sends him for an MRI, which he undergoes on September 24th, September 21st, excuse me, and the history recorded again is 41-year-old male with three-month history of neck and left upper extremity pain. Again, there's no mention of any work association that brought upon that pain nor any specific of June 4th or August 2nd. The doctor's office then calls him September 22nd, says you have a herniated disc, which is the herniated disc that the chiropractor suspected way back in July. He then calls Mr. Cascio and says, my doctor told me I have a herniated disc. I need to be off work. The employer says fine. He'd be surprised. He then calls back a second time. Do I need to fill something out? He says, well, no. He says, well, this is work-related. And he goes, well, when did it happen? We have no record of it. He goes, well, it must have been while I was carrying the ladder. The employer goes, did you have any pain at that time? No. The employer says, well, I don't think that falls under worker's comp. I'll turn it into my carrier, which he proceeded to do. The commission properly found that Mr. Hostady's testimony was not credible, was specifically refuted in numerous instances, found Mr. Cascio's testimony to be credible. Dr. Mance indicated there would exist no causation. And you even look at the notes from Dr. Rana and Fielder, there's a reference that they were called by Mr. Hostady's counsel and asked to opine on causation. And they kind of said, I can't comment on causation. Dr. Rana should. Fielder says, well, Dr. Rana should be the one. Rana said Fielder should be the one. They refused to comment on causation. The only note that he references is a note that they requested from claimant October 19th, where the claimant needed the note from the group carrier where it was checked condition. But he mentions the history to Dr. Yuck, who ultimately performed the surgery on February 10th of 05. The history there is even inconsistent. The history he gives there is June of 04, lift of a ladder, makes no mention of an August 2nd incident, and furthermore, it states in here, did not report to Boss until September. So that refutes his allegation that he made some mention on July 13th to his boss. Looking at this record, it is clear the commission drew reasonable inferences, they had the right to judge the credibility, and their decision should be affirmed. I'm going to ask you the same question I asked your opponent. What's your position on this line that we put in S&H that said in the future we may rethink the question of whether we should give a heightened degree of scrutiny to cases where the commission disagrees with the arbitrator on credibility? As you did point out, Justice, the Court indicated it may consider. I don't believe that that has been applied, and there was a dissent also in that case that rejected applying that additional scrutiny. But in this case, even if you were to apply additional scrutiny, based upon the findings of fact and the evidence and all these inconsistent histories, I believe it would overcome any level of scrutiny that you apply and that the commission decisions. So you don't think we should apply an extra level of scrutiny when they do it, even if they give no reasons for doing it? Well, if they give no reasons, I think you would be warranted. But I think here it's not. What should we do if they give no reasons? They gave reasons in this case. But if they gave no reasons, what do you think we ought to do? If they came to a decision, send it back, don't do it again? Well, there is the opportunity for either party to request specific findings by the commission. And if they didn't make that request for specific findings, then I would believe they would waive that point and no additional scrutiny would need to be applied. When is that request appropriately received? Before or after? I think it's before, obviously. So they don't know? Yeah. So, I mean, perhaps that should be pro forma. Thank you. Thank you, Counselor Rebello. Clerk will take the matter under advisement for disposition.